UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| THE 283 BAYOU CIRCLE TRUST | )   Case No.  6:13-bk-04561-KSJ |
| DATED OCTOBER 6, 2011, | )   Chapter 7 |
| | ) |
| Debtor. | ) |
| | ) |
| | |
| SAM ZALLOUM, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | )   Adversary No. 6:13-ap-00124-KSJ |
| | ) |
| RIVER OAKS COMMUNITY SERVICES | ) |
| ASSOCIATION, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION PARTIALLY
GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND ABSTAINING FROM FURTHER ACTION**

Plaintiff, Sam Zalloum, seeks to determine the nature, extent, and validity of a lien held by Defendant, River Oaks Community Services Association Inc. ("ROCSA"), on the real property (the "Property")[1] jointly owned by Zalloum and the Debtor.[2] In this adversary proceeding, the issue is whether unpaid homeowner's association dues constitute a lien against the jointly owned Property pursuant to § 720.3085 of the Florida Statutes.

Zalloum alleges ROCSA is a condominium association without the authority to levy assessments against the Property and that any claim of lien asserted by ROCSA is "null and

---

[1] The property is located at 283 Bayou Circle, Debary, Florida, 32713.
[2] The Property is owned jointly by Zalloum and the Debtor by means of a Quitclaim Deed, dated October 6, 2011, from William James Sorrentino, Jr.  The Quitclaim Deed also appoints Zalloum as the Trustee of the Debtor "empowered to buy, sell, encumber, and manage real property."  Doc. No. 1, Ex. C.

void" as the product of wrongful assessments and time barred pursuant to Chapter 718 of the Florida Statutes.[3] ROCSA filed its on Motion for Final Summary Judgment or Motion for Partial Summary Judgment (the "Motion") on October 29, 2014.[4] Plaintiff timely filed his response on (the "Response") on November 20, 2014.[5] No factual issues exist that preclude final summary judgment as a matter of law.

ROCSA seeks summary judgment on all of the legal issues raised in this adversary proceeding:

1. ROCSA is a Homeowner's Association governed by Chapter 720 of the Florida Statutes, and not a Condominium Association governed by Chapter 718 of the Florida Statutes;

2. ROCSA has the legal ability to assess the Property and, in fact, did so properly;

3. ROCSA holds a valid and enforceable lien for unpaid assessments;

4. ROCSA properly and timely enforced and foreclosed its lien; and

5. ROCSA's lien is governed by the five-year limitations period pursuant to Section 95.11(2)(b) of the Florida Statutes because ROCSA is a homeowner's association and not a condominium association subject to the provisions of Chapter 718 of the Florida Statutes.

Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[6] The moving party has the burden of establishing the right to summary judgment.[7] Conclusory allegations by either party, without specific supporting facts, have no probative value.[8] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable

---

[3] Doc. No. 1.
[4] Doc. No. 113.
[5] Doc. No. 121.
[6] Fed. R. Civ. P. 56.
[7] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[8] *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

to the nonmoving party only if there is a 'genuine' dispute as to those facts."[9] "Where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[10] "Once the movant . . . satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"[11]

### ROCSA is a Homeowner's Association Governed by Chapter 720

ROCSA asserts it is a homeowner's association because it serves as the "master association" of three sub-community associations which are a mixture of condominium and homeowner's associations and, as a matter of law, such a mixture of such associations cannot be a condominium association only.  For support, ROCSA cites the Florida Supreme Court case of *Raines v. Palm Beach Leisureville Community Association, Inc.* which held an association that derives its powers from articles of incorporation and declarations of restrictions governing both condominiums and single-family lots cannot fit within the definition of a condominium association.[12]  Thus, because ROCSA is comprised of both condominium associations and a homeowner's association, ROSCA indeed is a homeowner's association governed by Chapter 720 of the Florida Statutes, which governs homeowner's associations,[13] and not Chapter 718 of the Florida Statutes, which governs condominium associations.[14]

Zalloum argues ROCSA is comprised only of River Oaks I and River Oaks II, both of which are condominium associations and, in turn, ROCSA is as a condominium association governed by Chapter 718 of the Florida Statutes. In support of his argument, Zalloum cites his

---

[9] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).
[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 s. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).
[11] *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).
[12] *Raines v. Palm Beach Leisureville Cmty. Ass'n, Inc.,* 413 So. 2d 30, 32 (Fla. 1982).
[13] *See generally* Fla. Stat. Ch. 720.
[14] *See generally* Fla. Stat. Ch. 718.

own affidavit[15] and ROCSA's foreclosure complaint against the previous owners of the Property (the "State Court Action") in which ROCSA identifies itself as a condominium association.[16] ROCSA later amended that complaint to correctly identify itself as a homeowner's association.[17]

The evidence clearly establishes ROCSA is comprised of River Oaks I, River Oaks II, and River Oaks III.[18] River Oaks I and River Oaks II are condominium associations.[19] River Oaks III is a homeowner's association.[20] Zalloum and the Debtor are members of River Oaks I.[21] All three sub-associations and their property owners are subject to ROCSA's 1997 Amended and Restated Declaration of Covenants, Conditions and Restrictions for the River Oaks Lands ("Operative Declaration").[22]

Zalloum's unsupported arguments fly in the face of the documentary evidence. Under Florida law, a master association that governs both condominium associations and homeowner's

---

[15] Doc. No. 121, Ex. A.
[16] Doc. No. 121-2 at ¶ 2, "[ROCSA] is a condominium association operating pursuant to the provisions of Chapter 718.F.S."
[17] Doc. No. 49, Ex. N.
[18] ROCSA consists of three sub-community associations including: River Oaks I, a condominium association (Doc. No. 49, Ex. G); River Oaks II, a condominium association (Doc. No. 49, Ex. H); and River Oaks III, a homeowners association (Doc. No. 49, Ex. I).
[19] Doc. No. 49 Exhibits G & H at 40–42.
[20] Doc. No. 49 Exhibit I at 44–45.
[21] Zalloum Aff. ¶ 9, Doc. No. 121-1.
[22] (Operative Declaration, Doc. No. 49 at p. 63.) Section 21 of River Oaks I's Declaration of Condominium states "Each Unit Owner will be a member of the Community Services Association and will be subject to all of the terms and conditions of the River Oaks Covenants, as amended from time to time." (Doc. No. 49, Exhibit G.) Neither party produced relevant portions of River Oaks II's Declaration of Condominium (*see* Doc. No. 49, Exhibit H), but Zalloum admits that River Oaks II is governed by ROCSA. River Oaks III's declaration plainly states:

> The Property is also subject to and encumbered by the Amended and Restated Declaration of Covenants, Conditions and Restrictions for the River Oaks Lands (referred to herein as the "River Oaks Covenants"). The Property and each Lot (as defined in Article I) shall be held, sold, conveyed, leased, mortgaged and otherwise dealt with subject to the easements, covenants, conditions, restrictions, reservations, liens and charges set forth in the River Oaks Covenants. Wherever the provisions of this Declarations are in conflict with the River Oaks Covenants, the provisions of the River Oaks Covenants shall be considered superior to and shall overrule this Declaration.

(Doc. No. 49, Exhibit I.) Further, section 1.8 states: "The Owners shall be members of the Community Services Association . . . ." (*Id.*) The Court cannot fathom how Zalloum continues to argue that River Oaks III is not subject to ROCSA's Operative Declaration.

associations—like ROCSA—is governed by Chapter 720 of the Florida Statutes.[23] ROCSA is properly classified as a homeowner's association, not a condominium association.

### **ROCSA has the Legal Ability to Assess the Property**

ROCSA argues it is empowered to assess a sub-district pursuant § 720.303 of the Florida Statutes[24] and section 7.1 of the Operative Declaration. Further, ROCSA maintains that the Debtor and Zalloum are members of ROCSA by virtue of ownership of the Property. Section 7.1 of ROCSA's Operative Declaration provides:

> Each Owner shall be responsible for the payment of Assessments for Common Expenses to the Community Services Association as hereinafter provided. Assessments for Common Expenses attributable to Property Units under the jurisdiction of a Community Association may be collected by the Community Services Association or the Community Associations (if the responsibility for the collection of Assessments is delegated to the Community Associations) even though such Assessments are the responsibility of the Owners of those Property Units.[25]

Zalloum argues ROCSA is empowered to collect assessments from its members pursuant to Chapter 718 of the Florida Statutes only. Zalloum provides no authority for this argument. The clear language of § 720.303 and the Declaration, quoted above, properly empower ROCSA to assess the Property. Further, this Court already ruled in favor of ROCSA on the same exact issues in Zalloum's wife's personal bankruptcy case. Mrs. Zalloum's nearby home in the same development was subject to ROCSA's Declaration; that ROCSA's is the proper association for assessing fees against the Property; and ROCSA properly assessed fees against the Property.[26]

---

[23] *See Raines v. Palm Beach Leisureville Cmty. Ass'n, Inc.,* 413 So. 2d 30, 32 (Fla. 1982).
[24] Fla. Stat. § 720.303 provides a general grant of authority for homeowners associations to make and collect assessments. Fla. Stat. § 720.3085 provides the governing documents must describe the manner in which expenses are shared and specify the member's proportional share thereof.
[25] Operative Declaration, Doc. No. 49 at 64.
[26] Doc. No. 231 in Case No. 6:13-bk-04030-KSJ.) The Final Evidentiary Hearing on Debtor's Objection to ROSCA's Claim was held on October 10, 2014. The order overruling the Debtor's Objection was entered on November 19, 2014.  (Doc. No. 234.)

**ROCSA Holds a Valid and Enforceable Lien**

ROCSA argues § 720.3085 of the Florida Statutes[27] and Section 7.6.4 of the Declaration[28] empower it to record a lien against a parcel for unpaid assessments. ROCSA also maintains it fully complied with all required procedures. ROCSA provided the previous owner of the property, Mr. Sorrentino, a Notice of Intent to Lien in compliance with § 720.3085(4) of the Florida Statutes on December 11, 2007.[29] After waiting the requisite 45 days from sending the Intent to Lien, ROCSA filed a Claim of Lien including the description of the parcel, the name of the record owner, the name and address of the association, the assessment amount due, and the due date as required by § 720.3085(1)(a) of the Florida Statutes on February 29, 2008.[30]

Zalloum asserts the lien is invalid because ROCSA never filed a claim of lien including *his* name or the *Debtor's* name. Whether the claim of lien listed their names is not only irrelevant but illogical. ROCSA filed its Claim of Lien before Zalloum and the Debtor became owners, naming the previous owner of the Property, Mr. Sorrentino.[31] "A parcel owner is jointly and severally liable with the previous parcel owner for all unpaid assessments that came due up to the time of transfer of title."[32] Zalloum is liable for Sorrentino's unpaid assessments. Zalloum further is liable for assessments and collection costs that accrued and continue to accrue once he

---

[27] "When authorized by the governing documents, the association has a lien on each parcel to secure the payment of assessments and other amounts provided for by this section." Fla. Stat. 720.3085(1). "To be valid, a claim of lien must state the description of the parcel, the name of the record owner, the name and address of the association, the assessment amount due, and the due date." Fla. Stat. 720.3085(1)(a). "A parcel owner is jointly and severally liable with the previous parcel owner for all unpaid assessments that came due up to the time of transfer of title. This liability is without prejudice to any right the present parcel owner may have to recover any amounts paid by the present owner from the previous owner." Fla Stat. § 720.3085(2)(b).
[28] ROCSA "shall have a lien on all property owned by an Owner for unpaid Assessments…or others monies owed to [ROCSA] by such Owners, and for interest, reasonable attorneys' fees incurred by [ROCSA] incident to the collection of the Assessments and other monies…To give public notice of the unpaid Assessment or other monies owed, [ROCSA] may record a claim of lien in the public Records of Volusia County, Florida…" (Section 7.6.4 of Operative Declaration, Doc. No. 49 at 66.)
[29] Doc. No. 49, Exhibit J.
[30] Doc. No. 49, Exhibit K. *See* Fla. Stat. § 720.3085(1)(a).
[31] Doc. No. 49, Exhibit K; Quitclaim Deed, Doc. No. 1, Ex. C.
[32] Fla. Stat. § 720.3085(2)(b).

became record owner.[33] Zalloum received his interest by quitclaim deed, not a warranty deed, and had record notice of ROCSA's valid and enforceable lien by virtue of the recorded Claim of Lien.

Zalloum makes a number of additional unsupported arguments: (i) the lien secures assessments ROCSA was not entitled to make for private non-common area lawn services; (ii) ROCSA failed to make a written demand for unpaid assessments prior to seeking to foreclose its lien; and (iii) ROCSA failed to file a lien against the Property. For purposes of a motion for summary judgment, such conclusory allegations without specific supporting facts have no probative value.[34]

The documentary evidence clearly disproves Zalloum's arguments and supports a finding, as a matter of law, that ROCSA has the authority to place a lien for unpaid assessments against the Property, that ROCSA took all proper and necessary steps to secure a lien against the Property, and that ROCSA holds a valid and enforceable lien encumbering the Property.

### **ROCSA Timely Enforced its Lien**

ROCSA asserts it is empowered to foreclose its lien against the Property for unpaid assessments as provided under § 720.3085 of the Florida Statutes[35] and Section 7.6.4 of the Operative Declaration and that ROCSA fully complied with the specified procedures. Specifically, ROCSA provided Mr. Sorrentino with a Notice of Intent to Foreclose Lien on February 27, 2008, in compliance with § 720.3085(4) of the Florida Statutes.[36] ROCSA waited more than the requisite 45 days after sending its Notice of Intent to Foreclose Lien before filing

---

[33] *See* Fla. Stat. § 720.3085(2)(a).

[34] *Gordon v. Terry,* 684 F.2d 736, 744 (11th Cir. 1982), *cert. denied,* 459 U.S. 1203, 103 S. Ct. 1188, 75 L.Ed.2d 434 (1983).

[35] "The association may bring an action in its name to foreclose a lien for assessments in the same manner in which a mortgage of real property is foreclosed and may also bring an action to recover a money judgment for the unpaid assessments without waiving any claim of lien. The association is entitled to recover its reasonable attorney's fees incurred in an action to foreclose a lien or an action to recover a money judgment for unpaid assessments." Fla. Stat. 720.3085(1)(c).

[36] Doc. No. 49, Exhibit L. *See* Fla. Stat. § 720.3085(4).

its foreclosure complaint in State Court on December 21, 2009.[37]  The State Court entered a Partial Final Judgment in favor of ROCSA finding ROCSA "holds a lien, superior to all claims or estates" as to the Property.[38]

Zalloum advances two more unsupported arguments attacking the continued validity of ROCSA's lien. Zalloum argues a settlement agreement purportedly reached between ROCSA and Mr. Sorrentino—the prior Property owner—satisfied ROCSA's lien. Zalloum produces absolutely no evidence to support this argument, aside from an order of dismissal stating that a stipulation for settlement was reached.[39] Zalloum did not attach a copy of the purported settlement agreement to his response. Additionally, Zalloum states he satisfied the lien by tendering a quitclaim deed to ROCSA in the amount of $50,000.00.[40]  Zalloum is the only signatory to the quitclaim deed, and no party recorded the deed. ROCSA significantly never signed or accepted this deed in satisfaction of ROCSA's claims. No evidence supports an argument that this fanciful deed satisfies ROCSA's claims against Zalloum.

Zalloum fails to prove the lien was satisfied. Zalloum further asserts the amount claimed as owing and secured by the Lien is not accurate and constitutes an improper collection of illegal and undisclosed charges. Zalloum again offers no evidence to support this position, merely stating he "challenges the authenticity" of the affidavits provided by ROCSA. Again, to survive summary judgment, Zalloum must set forth specific facts showing that there is an issue for trial, not unsupported conclusory statements.[41] ROCSA provided an adequate accounting of the amount it is owed, but the amount is constantly increasing due to accruing interest and attorney

---

[37] Doc. No. 121, Exhibit B.

[38] (Doc. No. 49, Exhibit D.) Zalloum appealed this judgment, but the state appellate court held the issue was not ripe because one of the foreclosure defendants—the Debtor—was in bankruptcy and subject to the automatic stay. The argument was not raised by ROCSA, but the Court observes that the partial judgment could be deserving of collateral estoppel weight. *See Christo v. Padgett*, 223 F.3d 1324, 1338-39 (11th Cir. 2000) (holding that finality is not as stringent a requirement for issue preclusion than claim preclusion). In any event, this Court wholeheartedly agrees with the prior ruling of her sister State Court.

[39] Doc. No. 121, Exhibit B.

[40] Doc. No. 121, Exhibit B.

[41] *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

fees.[42] At this stage, the Court cannot determine the exact amounts Sorrentino, Zalloum, and most importantly this Debtor, owe to ROCSA.

### ROCSA's Lien is Governed by the Five Year Limitations Period of § 95.11(2)(b) of the Florida Statutes

Because ROCSA is a homeowner's association, Chapter 720 of the Florida Statutes governing homeowner's associations, and not Chapter 718 of the Florida Statutes, establishes the applicable statute of limitations. Section 720.3085(c) of the Florida Statutes empowers ROCSA to "bring an action in its name to foreclose a lien for assessments in the same manner in which a mortgage of real property is foreclosed and may also bring an action to recover a money judgment for the unpaid assessments without waiving any claim of lien."[43] Section 95.11(2)(c) of the Florida Statutes sets a five-year statute of limitation for actions to foreclose on a mortgage.[44]

Zalloum argues the applicable statute of limitations is found under Chapter 718 of the Florida Statutes because ROCSA is a condominium association. Under § 718.116(5)(b), a condominium association's lien "is not effective 1 year after the claim of lien was recorded unless, within that time, an action to enforce the lien is commenced."[45] Zalloum contends, under the one-year statute of limitations, ROCSA filed its complaint to foreclose its lien too late.

As previously established, ROSCA is properly classified as a homeowner's association governed by Chapter 720 of the Florida Statutes. Therefore, ROCSA's lien is subject to § 95.11(2)(c)'s five-year statute of limitations. ROCSA filed its claim of lien on February 29, 2008, and commenced the foreclosure of the lien on December 21, 2009—well within the applicable five-year statute of limitations.

---

[42] Doc. No. 49, Exhibit B.
[43] Fla. Stat. § 720.3085(c).
[44] *See Dorta v. Wilmington Trust Nat. Ass'n*, No. 5:13-CV-185-OC-10PRL, 2014 WL 1152917, at *7 (M.D. Fla. Mar. 24, 2014).
[45] Fla. Stat. § 718.116(5)(b).

**The Court Abstains from any Further Action in this Adversary Proceeding**

Given that this bankruptcy case is near completion and this Court will have no further role in administering the Property, the State Court presiding over ROCSA's foreclosure case is in a much better position to liquidate ROCSA's claim and to issue a final foreclosure judgment. The automatic stay already was modified to allow the State Court to address any remaining issues between the parties.[46] Only the State Court has the power to enter final judgments against the non-debtor parties, Zalloum and Sorrentino. Indeed, the State Court already did just that.[47] As such, this Court will abstain from deciding any further disputes in this adversary proceeding and return the litigation to the State Court, which is better situated to enter final judgments against the Debtor, Zalloum, and Sorrentino.

**Conclusion**

No material facts are in dispute. ROCSA is entitled to final summary judgment as a matter of law. A separate Final Judgment will be entered consistent with this memorandum opinion, stating ROCSA, a homeowner's association, holds a valid and enforceable lien on the Property pursuant to Chapter 720 of the Florida Statutes that is superior to any interest in the Property held by Zalloum or the Debtor. The Court, however, is unable to determine the exact amount of the total debt owed by the Debtor, Zalloum, and Sorrentino to ROCSA because attorney fees and assessments are constantly accruing. Therefore, the Court will abstain and return this dispute back to the State Court for calculation of the debt and entry of an appropriate Final Judgment of Foreclosure.

DONE AND ORDERED in Orlando, Florida, on March 6, 2015.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[46] Doc. No. 18.
[47] Doc. No. 49, Exhibit D.

Barry A. Postman is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.